Robert R. Viducich
LAW OFFICE OF ROBERT R. VIDUCICH
40 Wall Street, 28th Floor
New York, New York 10005
(212) 400-7135
rviducich@rrvlaw.com
*Attorneys for Defendant Hana Fuchs*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WONDERWORK, INC.,<br><br>               Debtor. | Chapter 11<br><br>Case No. 16-13607-smb |
| VINCENT A. SAMA, as Litigation Trustee of the WW Litigation Trust,<br><br>               Plaintiff,<br><br>- against -<br><br>BRIAN MULLANEY, HANA FUCHS, THEODORE DYSART, RAVI KANT, JOHN J. CONEYS, STEVEN LEVITT, CLARK KOKICH, STEVEN RAPPAPORT, RICHARD PRICE, and MARK ATKINSON,<br><br>               Defendants. | Adv. Pro. No. 18-1873-smb |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS THE COMPLAINT AS AGAINST HANA FUCHS**

In further support of her motion to dismiss, with prejudice, the Complaint as against her pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Hana Fuchs (Debtor's former CFO) respectfully submits this reply memorandum of law in response to Plaintiff's Opposition to Defendants' Motion to Dismiss (herein, the "Opposition").[1]

## PRELIMINARY STATEMENT

Plaintiff no longer advances the implausible argument that Hana Fuchs was overcompensated or any claim that she committed waste. And, despite his continued use of (improper) group allegations in his Opposition, it is crystal clear that he has not adequately alleged a claim against her for violating the duty of care or loyalty, as he has not pled (and cannot), *inter alia*, facts showing any scienter, bad faith, inattention to her duties, or other failures on her part. Moreover, he fails to explain how any of her alleged conduct caused Debtor any actual harm – as distinguished from "potential" liability (for violations of law it fails to actually identify).

Instead, Plaintiff engages in conclusions and hyperbole, and hurls wrongful and defamatory characterizations – recklessly, without any support from his woefully deficient Complaint – referring to "criminal" activity and beginning his Opposition by boldly alleging that "there is no serious dispute that WonderWork, Inc. (the "Debtor") was a fraud." But, in fact, she was not involved in any criminal activity, and many *would* dispute (and hotly) the characterization of Debtor as a fraud – not just Ms. Fuchs, but surely the other Defendants and the many poor in underdeveloped countries who benefitted from life-changing surgeries thanks to Debtor. Indeed, even the Examiner's Report on which he relies did not characterize Debtor that way, or accuse anyone of "liv[ing] like Diddy." To the contrary, the Examiner conceded that "but for the Arbitration award [*won by Plaintiff's other client*, HelpMeSee], the Debtor did not appear to be in

---

[1] Capitalized terms appearing herein have the meaning ascribed to them in Ms. Fuchs' memorandum of law submitted in support of her April 2, 2019 dismissal motion (herein, the "Opening Brief").

1

any financial distress that would have led to change in its customary (albeit in some cases, unorthodox) business practices," and essentially maintained that it suffered from inefficiency and spending too much money on fundraising, while recognizing it was also being undermined by Plaintiff's other clients (HelpMeSee and SmileTrain).

But, in any event, Plaintiff's wild rhetoric does not ultimately matter for purposes of Ms. Fuchs' motion because it cannot rescue his Complaint from its failure to assert allegations that indicate she acted recklessly or in bad faith or knowingly violated any duties or laws. In sum, his Opposition confirms what was pointed out in our Opening Brief: Plaintiff's claims are merely conclusory and otherwise merit dismissal under *Iqbal*, as they are not even plausible in view of the undisputed facts – which include the lack of objection to the bookkeeping and accounting practices by the auditors and boards of two different charities for many years, Debtor and SmileTrain. Moreover, the meritless nature of this lawsuit is particularly clear and inexcusable in view of the enormous amount of discovery taken by the Examiner (and available to Plaintiff), which included Ms. Fuchs sitting for two full deposition days and otherwise cooperating to assist him in understanding Debtor's accounting and bookkeeping practices.

**ARGUMENT**

In the interests of brevity and judicial economy, Ms. Fuchs adopts and incorporates by reference herein those portions of the reply brief submitted by Mr. Mullaney which explain why the Complaint's Fourth Count (which was asserted against both him and her) should be dismissed, including that legal brief's introduction and section "I," and we briefly supplement those arguments with the following discussion. [2]

---

[2] Because it appears that Plaintiff has abandoned any claim that Ms. Fuchs was overcompensated or committed waste, this brief does not address any such claim.

A.  **Plaintiff Fails to Show That Any Cognizable Breach of the Duty of Care is Alleged as Against Ms. Fuchs**

As explained in our Opening Brief, Plaintiffs' Complaint not only fails to allege that Ms. Fuchs somehow failed to properly inform herself prior to making any business decision, or otherwise neglected or ignored her duties, it also fails to explain how, in view of the lack of objection to the bookkeeping and accounting practices by the auditors (or the board), her conduct represents an "extreme departure from the ordinary standard of care and a reckless disregard" of her duties and responsibilities (Complaint, ¶ 141). Plaintiffs' Opposition (necessarily) suffers from the same deficiencies. In fact, the terms "reckless" and "extreme departure" appear nowhere in that submission. (*See* Opposition.)

As he did in his Complaint, Plaintiff improperly engages in group pleading in his Opposition and, worse still, he contends that his Complaint supposedly sets forth various allegations of deliberate/intentional breaches, but generally does so without pointing to particular paragraphs. (*See* Opposition, p. 23-24.) He now contends (at p. 23), without any citation, that "at best, Mullaney and Fuchs are guilty of breaching their duty of care by intentionally failing to inform themselves of the basic accounting and legal standards applicable to a non-profit organizations . . ." but his Complaint does not actually even make that (conclusory) statement (and in any event, he is not permitted to amend his complaint via an opposition brief). (*See* Complaint and Fed. R. Civ. P. 15.) Similarly, his Opposition states (at p. 23) that "[t]he allegations that Mullaney and Fuchs argue should be immune from review [under the business judgment rule] include clear and repeated violations of applicable law, including actions that, at a bare minimum, Mullaney and Fuchs should have known were illegal and in some cases outright criminal" but, among other failures (described in Mr. Mullaney's reply brief), he fails to identify there – or in his Complaint – what applicable or criminal law she (or anyone else) violated. Indeed, even the

3

Complaint paragraphs he actually does cite there (paragraph nos. 2 ("Nature of the Action") and 141 ("Fourth Claim of Relief")), do not identify the law supposedly violated, let alone assert non-conclusory allegations showing a failure to become informed or otherwise act with care.

At bottom, Plaintiff has not adequately alleged a breach of the duty of care (and he cannot do so, as he should know from the enormous discovery taken by the Examiner and provided to him).

### B. Plaintiff Fails to Show That Any Cognizable Breach of the Duty of Loyalty and Good Faith is Alleged as Against Ms. Fuchs

As explained in our Opening Brief, Ms. Fuchs is not accused of any improper "self-dealing" transactions herself, and there are no actual allegations that suggest she was not, at all times, acting in good faith and doing what she believed to be appropriate and in the best interests of the Debtor. In short, even assuming, *arguendo*, that there was anything wrong about her accounting or bookkeeping practices, there are no allegations showing or suggesting that she *knew* them to be wrong and was being disloyal.[3]

Unable to contest the foregoing with any non-conclusory allegations from his Complaint, Plaintiff resorts again to lumping Ms. Fuchs in with his allegations against Mr. Mullaney. First, he contends (at pp. 25-26) that "Mullaney and Fuchs caused Debtor to pay $245,357.45 in fees in the Smile Train Copyright Case, despite the Board agreeing to cover only up to $150,000 of Mullaney's legal fees (*id*. ¶¶ 78, 80)." But the cited paragraphs of the Complaint (nos. 78 and

---

[3] Quite to the contrary, Plaintiff pleads that "Fuchs had no professional training in finance or accounting" (Compl. ¶ 7) and KPMG did not object to anything she had done. Furthermore, even the Examiner conceded that, as concerns restricted funds, "his conclusions regarding the Debtor's purported reliance on accounting rules related to cost allocation may also prove unpopular in the non-profit world," and that certain of Debtor's accounting methods concerning in-kind donation numbers was "not uncommon practice among certain charities." (Report, at pp. 6, 171)

4

80) do not mention Ms. Fuchs at all. Next, he argues (at Opposition, p. 27) that "they had previously been informed that this practice [of the so-called "limbo pay"] was improper," and relies on *Hampshire Group, Ltd. v. Kuttner*, No. Civ. A. 3607-VCS, 2010 WL 2739995 (Del. Ch. July 12, 2010). But, there is no allegation in the Complaint that anyone informed Ms. Fuchs that anything she did was improper, and as previously explained in our Opening Brief (and the opening brief of Mr. Mullaney), the facts in *Hampshire* are very different than the ones alleged here and support dismissal of this action as against her.[4]

Again, the improper activity in *Hampshire* involved, *inter alia*, an annual allotment of $140,000 (in effect, a personal slush fund) for certain employees which was concealed and actually consisted of "extra, tax-free compensation" being used for "charges that were so obviously personal" – and which the CFO "knowingly caused" the corporation to treat as reimbursable business expenses even when it became clear to him that doing so was not legal – as well as the treatment of an employee's child's college tuition payments as a company charitable donation. (*Hampshire*, 2010 WL 2739995 at **2, 23, 25, 29-31) In addition, the CFO there also "circumvented instructions" by the corporation's audit committee concerning the taking of certain deductions in connection with a scheme involving improper tax deductions for employees (the so-called "sweater caper"). (*See Hampshire*, 2010 WL 2739995, at **2, 31.) Here, there are no such facts.

There are no allegations here concerning slush monies or obviously dubious deductions meant to increase someone's compensation. Indeed, as previously explained in our (and Mr.

---

[4] Moreover, even the Complaint's paragraph 85 – which describes a re-issuance by *SmileTrain* (not Debtor) of Mr. Mullaney's W-2s after he and Ms. Fuchs left SmileTrain – does not allege that Ms. Fuchs was informed of anything or otherwise thought she was violating any law or regulation. (*See* Complaint, ¶ 85). And, her Opening Brief's argument regarding Mr. Wang's vendetta against Mr. Mullaney was not some admission to the contrary (or of anything else), and was not meant to be.

Mullaney's) prior submission, the allegations here indicate that Mr. Mullaney was receiving *less* (not more) money than he was entitled to receive. Nor are there any allegations concerning the circumventing of any instructions or the concealing of anything, or any other facts from which one can reasonably infer that the CFO here, Ms. Fuchs, had any idea that what she was doing violated any law or was otherwise impermissible.[5] In fact, even the Opposition (like the Complaint and its lawsuit against KPMG) concedes the opposite: that the auditors and board knew of the accounting and bookkeeping practices complained of here (and did not object). (*See, e.g.,* Opposition at p.11.)

Moreover, the corporation in *Hampshire* "incurred additional tax liability, was required to undertake an expensive investigation, and had to restate its financial statements." Again, there are no such damages allegations here. And, in particular, Plaintiff alleges no such actual harm to the Debtor as a result of any conduct by Ms. Fuchs. Instead, the Plaintiff alleges that Debtor was exposed to "potential" liability," and even the impact loans and post-petition expenses he complains of are not attributed (or attributable) to Ms. Fuchs. (*See, e.g.,* Complaint, ¶¶ 52, 108-113 & 121-123.) In fact, we respectfully submit that any real harm to Debtor was caused not by Ms. Fuchs (or any other defendant), but by the efforts of Plaintiff's other clients to undermine it, which ill-willed efforts even the Examiner's Report acknowledged.[6] So, in reality, perhaps the only thing this case has in common with *Hampshire* is that it, too, "is an unfortunate case in which it is clear that the parties have spent far more money investigating and litigating over certain matters than those matters involved." (*Hampshire*, 2010 WL 2739995 at *1).

---

[5] Furthermore, the improper activity in *Hampshire* did not involve any arguably arcane or controversial accounting issues – unlike here (as noted above, in n.3).

[6] The Examiner's Report noted that "but for the Arbitration award [of Plaintiff's other client, HelpMeSee], the Debtor did not appear to be in any financial distress," and also acknowledged HelpMeSee's and SmileTrain's ill-willed attempts to undermine Debtor. (*See* Report, at pp. 266-270.)

At bottom, Plaintiff has not adequately alleged a breach of the duty of loyalty and good faith (and, again, he cannot do so, as he should know from the enormous discovery taken by the Examiner and provided to him).

## **CONCLUSION**

The claims asserted against Hana Fuchs should be dismissed with prejudice.

Dated: May 17, 2019  
       New York, New York

Respectfully submitted,

/s/ Robert R. Viducich  
Robert R. Viducich  
LAW OFFICE OF ROBERT R. VIDUCICH  
40 Wall Street, 28th Floor  
New York, New York 10005  
(212) 400-7135  
rviducich@rrvlaw.com

*Attorney for Defendant Hana Fuchs*