# EXHIBIT A

## Litigation Trustee's Submission of Relevant Facts and Evidence in Connection with Defendants' Motions to Dismiss the Complaint
*In re WonderWork Inc.*, Adv. Pro. No. 18-01873 (SMB)

**Key of Cited Documents and Transcripts**

| | |
|---|---|
| "Ex. Rep." | Final Report of Jason R. Lilien, Examiner |
| "Doc. Ex." | Exhibits accompanying to the Final Report of Jason R. Lilien, Examiner |
| "_____Ex." | Exhibits accompanying the transcripts of the interviews conducted by the Examiner in connection with his investigation |
| "_____ Tr." | Transcripts of the interviews conducted by the Examiner in connection with his investigation |
| "Dkt. No." | Documents on the docket of *In re WonderWork, Inc.* (16-13607-SMB) (Bankr. S.D.N.Y.) |

**Debtor's Formation and Board Composition**

| Document | Document Description | Relevance |
|---|---|---|
| Ex. Rep. at 27–32, 51-58 | Discussion of Debtor's corporate history, organization, and board composition | Debtor's internal organization |
| Doc. Ex. 72 at WW_EMAILS0251267-1; *see also* Mullaney Ex. 47 | November 30, 2015 email from Mullaney to Coneys and Kant | Debtor's internal organization: Mullaney explaining his views on Dysart's resignation |
| Doc. Ex. 73 at WW_EMAILS0011242-1; *see also* Mullaney Ex. 48 | November 30, 2015 email from Mullaney to Greenwood, Fuchs, and Lazarus | Debtor's internal organization: Mullaney explaining his views on Dysart's resignation |
| Doc. Ex. 75 at WON-EX 001289 | December 23, 2015 Board meeting minutes appointing new members | Debtor's internal organization: upon Dysart's departure, the remaining board members—Mullaney, Kant, and Coneys—approved a new slate of board members in December 2015: Levitt, |

| Document | Document Description | Relevance |
|---|---|---|
| | | Kokich, Rappaport, Price, Atkinson, and Steele |
| Doc. Ex. 80 at WON_EMAILS023861-2; *see also* Mullaney Ex. 49, at 2 | December 21, 2016 email from Coneys to Mullaney informing Mullaney of his resignation | Debtor's internal organization: Coneys tried to resign informing Mullaney that "[w]ith the HMS crisis unfolding, more time, not less, is needed for all board members to help you and the company weather this difficult storm. I have not been able to make that time commitment and do not envision being able to make it in the coming months . . . Put simply, if I am unable to carry out my responsibilities as board members to the best of my abilities, I should not continue to serve on the board." |

**Mullaney Compensation/Pearl Meyer Report**

| Document | Document Description | Relevance |
|---|---|---|
| Ex. Rep. at 195–210, 242-250 | Discussion of Debtor's retention of Pearl Meyer, Pearl Meyer's analysis, and refusal to opine on the reasonableness of Mullaney's compensation | Allegations re Mullaney compensation/Pearl Meyer Report |
| Doc. Ex. 66 at WON-EX 1265 | June 13, 2013 Board meeting minutes noting Pearl Meyer presentation | Allegations re Mullaney compensation/Pearl Meyer Report |
| Doc. Ex. 186 at WW_EMAILS0211672-1 | June 10, 2013 email from Mullaney to Dysart re Mullaney's comments on the Pearl Meyer draft report | Allegations re Mullaney compensation/Pearl Meyer Report: Mullaney had a significant amount of input into the Pearl Meyer process |
| Doc. Ex. 187 | Pearl Meyer engagement letter | Allegations re Mullaney compensation/Pearl Meyer Report: stated that Pearl Meyer's fee would be increased by $5,000 "if we |

2

| | | |
|---|---|---|
| | | can state pay is reasonable after Intermediate Sanctions" |
| Doc. Ex. 187.1 at 1–2 | May 16, 2013 email from Dysart to Coneys, Kant, and Pearl Meyer re draft minutes of May 16th meeting with Pearl Meyer and WonderWork Independent Directors | Allegations re Mullaney compensation/Pearl Meyer Report |
| Doc. Ex. 189 (WW_EMAILS0204094) | October 27, 2015 email from Mullaney to Coneys, Kant, and Dysart | Allegations re Mullaney compensation/Pearl Meyer Report: Mullaney responding to reduction of Mullaney's bonus |
| Doc. Ex. 193 at WW_EMAILS0012807-1 | December 21, 2015 email chain between Mullaney and Fuchs | Allegations re Mullaney compensation: Mullaney and Fuchs discussing Mullaney's 2015 bonus |
| Doc. Ex. 194 at WW_EMAILS0012615-3 | June 22, 2012 email from Mullaney to Fuchs re Board approval of Mullaney's compensation | Allegations re Mullaney compensation |
| Mullaney Ex. 35 WW_EMAILS0012040-1–2 | September 11, 2013 email from Dysart confirming Mullaney's bonus | Allegations re Mullaney compensation |
| Mullaney Ex. 36 | September 12, 2013 email from Mullaney to Fuchs | Allegations re Mullaney compensation: Mullaney instructing Fuchs not to send the Board an email re his bonus without his approval |
| Mullaney Ex. 43 (WON-EX 010764) | Pearl Meyer Report | Described extensively in complaint |
| Mullaney Ex. 44 at 1–2 | May 30, 2013 email from Mullaney to Pearl Meyer | Allegations re Mullaney compensation/Pearl Meyer Report: Mullaney's comments to the draft report |
| Mullaney Ex. 45 at 1 | June 10, 2013 email from Mullaney to Dysart | Allegations re Mullaney compensation/Pearl Meyer Report: Mullaney interfered with Pearl Meyer |
| Mullaney Ex. 54 | Payroll Ledger | Allegations re Mullaney compensation /Pearl Meyer Report: the Payroll Ledger tracked the amount of compensation Mullaney actually received as well as |

| Document | Document Description | Relevance |
|---|---|---|
| | | the amount of compensation that Mullaney had been awarded by the Board, but not yet received and debited expenses |
| Mullaney Tr. 517:15–519:22 | Discussing Mullaney's interactions with Pearl Meyer while report was being prepared | Allegations re Mullaney compensation /Pearl Meyer Report |

**Mullaney Compensation/Employment Agreement**

| Document | Document Description | Relevance |
|---|---|---|
| Ex. Rep. at 203–205 | Discussion of negotiation and terms of Mullaney's employment agreement | Allegations re Mullaney compensation/Employment Agreement |
| Doc. Ex. 70 at WON-EX 1261 | February 14, 2013 board meeting minutes, Dysart to finalize CEO contract | Allegations re Mullaney compensation/Employment Agreement: Dysart to take the lead on finalizing the employment contract and would also conduct a review of salaries of top paid employees |
| Doc. Ex. 193 at WW_EMAILS002807-1–2) | December 21, 2015 email between Mullaney and Fuchs re finalization of employment contract | Allegations re Mullaney compensation/Employment Agreement |
| Mullaney Ex. 40 WW_EMAILS0193824-1 | November 11, 2015 email from Mullaney to Dysart re employment contract | Allegations re Mullaney compensation/Employment Agreement: Mullaney told Dysart that he wanted the current draft of the employment contract approved without involving his personal lawyer |
| Mullaney Ex. 41 | Mullaney Employment Agreement | Allegations re Mullaney compensation/Employment Agreement: the Employment Agreement granted Mullaney numerous lucrative benefits that did not comply with Pearl Meyer's recommendation |

**Mullaney Compensation/Benefits**

| Document | Document Description | Relevance |
|---|---|---|
| Ex. Rep. at 71, 75-77 | Discussion of Debtor's travel policy and life insurance policies for which Mullaney's spouse was the beneficiary | Allegations re Mullaney compensation/benefits |
| Doc. Ex. 101 at WW_EMAILS0011606-1 | October 31, 2014 emails between Fuchs and Mullaney re Debtor's insurance policies for Mullaney's benefit | Allegations re Mullaney compensation/benefits |
| Doc. Ex. 102 at WW_EMAILS0011568-1 | May 1, 2015 email from Mullaney to Fuchs re Debtor's insurance policies for Mullaney's benefit | Allegations re Mullaney compensation/benefits: Debtor maintained a $4,000,000 policy which named Mullaney's wife as the beneficiary |
| Doc. Ex. 198 at WW_EMAILS0020718-1 | October 19, 2016 email from Mullaney to Fuchs requesting that costs for wife and daughter to Bangladesh be deducted from pay | Allegations re Mullaney compensation/benefits: Debtor's travel policy did not apply to Mullaney and Mullaney had final approval of all of his expenses |
| Doc. Ex. 200 at WW_EMAILS0230933-1 | November 21, 2012 email from Mullaney to Fuchs and Lazarus instructing re travel reimbursements | Allegations re Mullaney compensation/benefits: Debtor's travel policy did not apply to Mullaney and Mullaney had final approval of all of his expenses |
| Fuchs Ex. 4 | Employee Travel Policy | Allegations re Mullaney compensation/benefits |
| Fuchs Tr. at 56:2–18, 80:6–81:13 | Discussing Debtor's Travel Policy and insurance policies as related to Mullaney | Allegations re Mullaney compensation/benefits |

**Mullaney Compensation /Improper Expenses and Payroll Ledger**

| Document | Document Description | Relevance |
|---|---|---|
| Ex. Rep. at 62, 205–232, 249-250 | Discussing Mullaney and Fuchs' practice of "deferring" Mullaney's compensation and debiting improper expenses on the separate payroll ledger | Allegations re Mullaney compensation/improper expenses and Payroll Ledger |
| Doc. Ex. 24 | Mullaney's restated W-2s for Smile Train years 2006-2010 | Allegations re Mullaney compensation/improper expenses and Payroll Ledger: |

5

| | | Mullaney and Fuchs started the practice of keeping the separate payroll ledger at Smile Train, but Grant Thornton, in a report to the Smile Train Board, concluded it was inappropriate requiring Mullaney's W-2s for certain years to be restated |
|---|---|---|
| Doc. Ex. 65 | Payroll Ledger | Allegations re Mullaney compensation/improper expenses and Payroll Ledger: the Payroll Ledger tracked the amount of compensation Mullaney actually received as well as the amount of compensation that Mullaney had been awarded by the Board, but not yet received and debited expenses |
| Doc. Ex. 196 at WW_EMAILS0012498-1 | August 28, 2012 email from Mullaney to Fuchs re not exceeding $475K approved salary for the year and deducting expenses from his pay | Allegations re Mullaney compensation/improper expenses and Payroll Ledger: Mullaney's compensation payments were erratic and he instructed Fuchs to maintain his reported compensation at $475,000 per calendar year, even though his base pay plus bonus generally amounted to $725,000 |
| Doc. Ex. 197 at WW_EMAILS0020378-1 | December 22, 2016 email from Mullaney to Fuchs | Allegations re Mullaney compensation/improper expenses and Payroll Ledger: Mullaney's pay practices of deferring compensation and Coneys' awareness of same |
| Doc. Ex. 202 at WW_EMAILS0265922-1 | September 19, 2013 email from Mullaney to Haefner re Mullaney subsidizing trip to Maine | Allegations re Mullaney compensation/improper expenses and Payroll Ledger: example of improper expenses deducted in the Payroll Ledger |
| Doc. Ex. 207 at WON07320 | September 8, 2016 email from Fuchs to Mullaney | Allegations re Mullaney compensation/improper expenses and Payroll Ledger: |

6

| | confirming trip expenses to be deducted | example of improper expenses deducted in the Payroll Ledger |
|---|---|---|
| Doc. Ex. 213 at 1–2 (WON-EX 46754) | October 15, 2015 email from Coneys to Kant and Dysart re Mullaney's 2015 bonus and compensation practices | Allegations re Mullaney compensation/improper expenses and Payroll Ledger: Board was aware of Mullaney's Payroll Ledger and Coneys recognized it was an "unorthodox approach," but wrongly thought Mullaney was properly recording appropriate expenses and not gaining a tax advantage |
| Mullaney Ex. 54 | Payroll Ledger | Allegations re Mullaney compensation/improper expenses and Payroll Ledger: the Payroll Ledger tracked the amount of compensation Mullaney actually received as well as the amount of compensation that Mullaney had been awarded by the Board, but not yet received and debited expenses |
| Mullaney Tr. 592:10–17 | Discussing Mullaney's bonuses | Allegations re Mullaney compensation/improper expenses and Payroll Ledger |
| Fuchs Tr. 17:24–19:23, 57:18–58:21, 80:6–24, 323:15–330:25, 331:3–11, 343:8–25 | Discussing Mullaney's deferred compensation and benefits | Allegations re Mullaney compensation/improper expenses and Payroll Ledger |

**Mullaney's Personal Lawsuits**

| Document | Document Description | Relevance |
|---|---|---|
| Ex. Rep. at 44-50 | Discussing Mullaney's legal issues | Allegations re Mullaney's personal lawsuits |
| Doc. Ex. 59 (WON-EX 001257) | December 28, 2012 Board Resolution to indemnify Mullaney up to $150,000 in connection with the Smile Train Copyright Case | Allegations re Mullaney's personal lawsuits: the Smile Train Copyright Case was brought against Mullaney directly and did not name Debtor as a defendant, however the Board resolved |

| | | |
|---|---|---|
| | | to indemnify Mullaney up to $150,000 in legal expenses |
| Doc. Ex. 61 at WON-EX 1942 | Form 1096 for 2013 demonstrating that Debtor paid Jones Day $245,357.45 in connection with the Smile Train Copyright Case | Allegations re Mullaney's personal lawsuits: Debtor spent $245,357.45 in legal fees defending Mullaney in the action, even though no subsequent resolution was passed authorizing the Debtor to indemnify Mullaney for any amount higher than $150,000 |
| Doc. Ex. 63 | Judgment in Smile Train UK litigation | Allegations re Mullaney's personal lawsuits: Mullaney was required to pay a judgment in the Smile Train UK case in the amount of £701,959.21 and costs of £52,455 |
| Doc. Ex. 68 | Fuchs Employment Agreement | Allegations re Fuchs' lawsuit: Mullaney facilitated a resolution to the Fuchs Lawsuit whereby both Smile Train and Fuchs withdrew their claims with prejudice and Debtor entered into an employment contract that provided her with a $120,000 payment upon execution and guaranteed her employment for three years at a base salary of $200,000 |
| Doc. Ex. 70 at WON-EX 1261 | February 14, 2013 Board meeting minutes, Coneys to review legal bills of Smile Train Copyright Case | Allegations re Mullaney's personal lawsuits |
| Doc. Ex. 88 | WonderWork payroll summary showing Greenwood's first paycheck including bonus | Allegations re Mullaney's personal lawsuits: Greenwood's first paycheck was approximately $15,000 higher than her standard monthly compensation |
| Fuchs Ex. 6, at WON-EX 0150 | WonderWork 2012 IRS Form 990 showing grant to Smile Train | Allegations re Mullaney's personal lawsuits: despite the Smile Train Copyright Case being brought against |

| Document | Document Description | Relevance |
|---|---|---|
| | | Mullaney personally, Debtor paid a $450,000 grant to resolve the case |
| Fuchs Tr. at 33:21–34:10 | Fuchs explaining her salary | Allegations re Fuchs' lawsuit |
| Lazarus Tr. at 19:9–20:11 | Lazarus explaining her salary | Allegations re Mullaney's personal lawsuits: Lazarus received compensation totaling $169,000 when she joined Debtor in 2011 despite only working for part of the year, and her salary was then reduced to $121,500 in 2012 |

**Debtor's Representations Regarding Its Charitable Works and Financial Disclosures to Public and Government Entities**

| Document | Document Description | Relevance |
|---|---|---|
| Ex. Rep. at 68–73, 78-91, 110-137, 150-153, 156-183, 189-194, 250-256 | Discussion of board approved policies and procedures and Debtor's failure to comply with them, impact loans, and misrepresentations in fundraising materials | Allegations re Debtor's misrepresentations |
| Doc. Ex. 70, at WON-EX 001262 | February 14, 2013 Board meeting minutes, discussion of impact loans | Allegations re Debtor's misrepresentations: undermining Coneys' allegation that the loans were not legitimate loans |
| Doc. Ex. 93 (WON-EX 010666) | WonderWork Policy Manual | Allegations re Debtor's misrepresentations: the Examiner found little evidence that the Policy Manual was followed or referred to in the course of the day to day operation of the Debtor |
| Doc. Ex. 94 (WON-EX 001255) | October 11, 2012 Board meeting minutes approving Policy Manual | Allegations re Debtor's misrepresentations |
| Doc. Ex. 109 (WON07151) | Loan Agreement between WonderWork and Thompson Family Foundation | Allegations re Debtor's misrepresentations |
| Fuchs Ex. 12 | Roll-Forward Schedules | Allegations re Debtor's misrepresentations: Debtor's cash management system was not set up in accordance with |

9

| | | its Policy Manual or applicable law and it inappropriately treated all funds as fungible; Debtor would only attempt to reconcile its restricted fund balances at year end when Fuchs would prepare a "roll forward" schedule to show the change in restricted fund balances over the course of the year |
|---|---|---|
| Fuchs Ex. 16 at WON-EX 0003 | April 25, 2017 letter from CLM[1] to U.S. Trustee and Arnold & Porter including unaudited schedule of Debtor's restricted and unrestricted funds | Allegations re Debtor's misrepresentations: resulting restricted balance from Debtor's reclassification efforts; *compare with* Mullaney Ex. 11 |
| Fuchs Ex. 27 | WonderWork report re program trip to Bangladesh | Allegations re Debtor's misrepresentations: example of fundraising materials that the Examiner identified as containing rampant misrepresentations |
| Mullaney Ex. 5 | December 7, 2016 email between Mullaney and Fuchs re reclassifying funds | Allegations re Debtor's misrepresentations: following the receipt of the adverse HelpMeSee Arbitration ruling, Debtor's effort to reclassify funds as restricted increased |
| Mullaney Ex. 6 at WW_EMAILS0020580-1 | December 6, 2016 email from Mullaney to Fuchs, CLM, and KPMG re restricted funds | Allegations re Debtor's misrepresentations: following the receipt of the adverse HelpMeSee Arbitration ruling, Debtor's effort to reclassify funds as restricted increased |
| Mullaney Ex. 7 at WW_EMAILS0020512-1 | December 7, 2016 email from Mullaney to Fuchs saying that donations needed to be restricted | Allegations re Debtor's misrepresentations: following the receipt of the adverse HelpMeSee Arbitration ruling, Debtor's effort to |

---

[1] "CLM" refers to Debtor's counsel, Carter Ledyard & Milburn LLP.

| | | |
|---|---|---|
| | | reclassify funds as restricted increased |
| Mullaney Ex. 11 | October 21, 2016 email from Fuchs to Mullaney re amount of restricted funds | Allegations re Debtor's misrepresentations: following the receipt of the adverse HelpMeSee Arbitration ruling, Debtor's effort to reclassify funds as restricted increased |
| Mullaney Ex. 27 | Debtor's 10 year marketing summary showing plan to repay impact loans 3 years after they started maturing and at a rate of 66% | Allegations re Debtor's misrepresentations: as a result of Debtor's impact loans, Debtor's liabilities were greater than its assets |
| Lazarus Ex. 12 at WON07263 & WON07279 | April 7, 2017 letters in which Coneys and Price instruct Debtor to retroactively restrict their donations | Allegations re Debtor's misrepresentations / Allegations re the Board's conduct during bankruptcy: Coneys and Price retroactively reclassified their donations and were aware of Debtor's efforts in this regard |
| Greenwood Ex. 16 (WW_EMAILS0086891-1) | June 6, 2013 email between Greenwood and Fuchs re in-kind donations | Allegations re Debtor's misrepresentations: Debtor's practice re in-kind donations allowed it to inflate the amount of "donations" it was reporting as well as the amount of "grants" it actually made by an aggregate of more than $5 million through the Petition Date |
| Fuchs Tr. at 83:4–87:19, 137:17–149:17, 231:24–235:5 | Discussing in-kind contributions, restricted donations and funds, and matching donations | Allegations re Debtor's misrepresentations |
| Fuchs Tr. at 85:20–87:5, 248:15–251:4, 265:23–266:8, 284:16–287:5; 287:19–288:2 | Discussing misrepresentations made to donors re use of donations | Allegations re Debtor's misrepresentations |
| Mullaney Tr. at 181:13–182:32 | Discussing Mullaney's expenses | Allegations re Debtor's misrepresentations |
| Mullaney Tr. at 332:11–333:11 | Discussing legal expenses and the repayment of impact loans | Allegations re Debtor's misrepresentations |
| Greenwood Tr. 187:1-23 | Discussing in-kind contributions | Allegations re Debtor's misrepresentations |

**HelpMeSee Arbitration**

| Document | Document Description | Relevance |
|---|---|---|
| Ex. Rep. at 44–46, 256-59 | Discussing HelpMeSee arbitration award and breach of duty of care claims against Board | Allegations re the HelpMeSee arbitration |
| Doc. Ex. 58, at 59 | Final Arbitration Award | Allegations re the HelpMeSee arbitration: describing Mullaney as "not a credible witness" and his conduct towards HelpMeSee as "reprehensible" <br><br> The Examiner further found that Dysart, Coneys, and Kant did not have an understanding of the contract terms at issue between HelpMeSee and the Debtor, let alone a strong understanding of the issues raised in the arbitration or the substantial added time and expense that resulted from the Debtor's approach to the discovery process |

**Debtor and the Board's Conduct During Bankruptcy**

| Document | Document Description | Relevance |
|---|---|---|
| Dkt. No. 16 | HelpMeSee's Motion for Entry of an Order Directing the Appointment of a Chapter 11 Trustee, dated January 18, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 52 | Declaration of Clark Kokich in Opposition to HelpMeSee's Motion to Appoint a Trustee, dated February 22, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 55 | Declaration of John J. Coneys, Jr. in Opposition to HelpMeSee's Motion to Appoint a Trustee, dated February 20, 2017 | Allegations re the Board's conduct during bankruptcy |

| Dkt. No. 56 | Declaration of Steven D. Levitt in Opposition to HelpMeSee's Motion to Appoint a Trustee, dated February 20, 2017 | Allegations re the Board's conduct during bankruptcy |
|---|---|---|
| Dkt. No. 57 | Declaration of Richard T.G. Price in Opposition to HelpMeSee's Motion to Appoint a Trustee, dated February 20, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 58 | Declaration of Steven N. Rappaport in Opposition to HelpMeSee's Motion to Appoint a Trustee, dated February 23, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 60 | Declaration of Mark E. Atkinson in Opposition to HelpMeSee's Motion to Appoint a Trustee, dated February 24, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 62 | Debtor's Opposition to Motion to Appoint a Trustee, dated February 24, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 70 | HelpMeSee's Reply in Support of Motion to Appoint a Trustee, dated March 3, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 86, at 82:19-83:8 | March 10, 2017 Hearing re Motion to Appoint a Trustee | Allegations re the Board's conduct during bankruptcy: CLM offered an explanation for KPMG's refusal to audit Debtor[2] |
| Dkt. No. 102 | April 18, 2017 letter from HelpMeSee to Court | Allegations re the Board's conduct during bankruptcy: letter informs Court that Debtor was improperly asking donors to retroactively restrict their donations |
| Dkt. No. 110 | Order Directing the Appointment of an Examiner, dated April 21, 2017 | Allegations re the Board's conduct during bankruptcy |

---

[2] Note that Plaintiff agrees that the Court can consider the Litigation Trustee's KPMG Complaint as part of the record, however none of the allegations asserted therein should be treated as admissions or otherwise binding facts. See, e.g., *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594 (7th Cir. 2012).

13

| Dkt. No. 112 | Debtor's Application to Retain BDO, dated April 25, 2017 | Allegations re the Board's conduct during bankruptcy: sets forth BDO's compensation terms; describes Debtor's need to retain auditor and applicable deadlines for completing audit and other required filings, and difficulties in retaining auditor |
|---|---|---|
| Dkt. No. 117 at 21:11–20 | April 12, 2017 Hearing re Motion to Appoint a Trustee where the Court decided against appointing a trustee at that time | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 124 | HelpMeSee's Objection to Application to Retain BDO, dated May 4, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 131 at ¶¶ 3–4 | Debtor's Reply in Support of Application to Retain BDO, discussing explanation of KPMG's refusal to audit Debtor, dated May 8, 2017 | Allegations re the Board's conduct during bankruptcy: describes KPMG's unwillingness to continue as auditor and Debtor's difficulties in retaining auditor |
| Dkt No. 141, at 7:7-14:23 | May 11, 2017 Hearing re Application to Retain BDO | Allegations re the Board's conduct during bankruptcy: Court identifies concerns about Debtor's inability to retain an auditor and timing of audit |
| Dkt. No. 151 | Order Granting Debtor's Application to Retain BDO, dated May 24, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 185 | Amended Order Directing the Appointment of Chapter 11 Examiner, dated June 20, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 211 | Order granting Examiner's requested extension, dated July 28, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 213, at ¶¶ 14–19 | Examiner Status Report and Revised Work Plan explaining reasons for increased budget and | Allegations re the Board's conduct during bankruptcy |

| | extension, publicly filed on July 31, 2017 | |
|---|---|---|
| Dkt. No. 246 | Examiner's Status Update seeking extension, dated September 20, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 249 | Order to Show Cause re why Debtor has not completed the audit ("Audit OSC") | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 250 | Debtor's Response to Audit OSC, dated October 5, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 252 at ¶¶ 4, 18–64 | Declaration of Hana Fuchs in support of Debtor's response to Audit OSC, dated October 5, 2017 | Allegations re the Board's conduct during bankruptcy: describes KPMG's resignation and details issues and problems between Debtor and BDO regarding BDO's efforts to complete the audit |
| Dkt. No. 256 at ¶¶ 5–29 (and attached exhibits) | Statement of BDO in Response to Audit OSC, dated October 9, 2017 | Allegations re the Board's conduct during bankruptcy: explains BDO's inability to complete the audit due to material weaknesses and significant deficiencies in Debtor's internal controls; describes BDO's difficulties in working with Debtor to complete the audit; and describes BDO's communications to and from management and the Board |
| Dkt. No. 258 at ¶¶ 3–9 | HelpMeSee's Response to Audit OSC discussing Debtor's stated reasons for delayed audit | Allegations re the Board's conduct during bankruptcy: details how Debtor misled Court about status of audit |
| Dkt. No. 265 at 4–17; Dkt. No. 265-1 at 4–25 | Letter from BDO to Coneys, Rappaport, and Mullaney dated September 1, 2017 and Response from CLM to BDO dated September 10, 2017 | Allegations re the Board's conduct during bankruptcy: BDO's letter to the Board describes the status of the audit and that BDO may decline to issue an audit, and identifies material weaknesses and significant deficiencies in internal controls including issues relating to CEO compensation |

15

| | | |
|---|---|---|
| Dkt. No. 267 | Order Adjourning Audit OSC, dated October 16, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 268 | Letter from Examiner's counsel requesting an extension, dated October 19, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 272 | Status Report of BDO Regarding Audit of Debtor's 2016 Financial Statements | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 277, at 6:19-53:3 | October 12, 2017 hearing re Audit OSC | Allegations re the Board's conduct during bankruptcy: addresses Debtor's failure to make proper and accurate disclosure of audit issues to Court; notes concerns regarding Debtor's inability to complete audit |
| Dkt. No. 288 | Monthly Operating Report for September 2017 | Allegations re the Board's conduct during bankruptcy: identifies amount of donations received by Debtor during bankruptcy case (cited in FN 39 of Plaintiff's Opposition to Defendants' Motions to Dismiss) |
| Dkt. No. 294 | Order to Show Cause why the Court Should Not Appoint a Chapter 11 Trustee ("Trustee OSC"), dated October 31, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 308 | Court Order Directing Appointment of a Chapter 11 Trustee, dated November 9, 2017 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 368 | Monthly Operating Report for October 2017 | Allegations re the Board's conduct during bankruptcy: identifies amount of donations received by Debtor during bankruptcy case (cited in FN 39 of Plaintiff's Opposition to Defendants' Motions to Dismiss) |
| Dkt. No. 402 | Order Approving Fee Applications by Examiner and his professionals and BDO, dated May 25, 2018 | Allegations re the Board's conduct during bankruptcy: quantifies costs of examiner |

|  |  | investigation and BDO's audit efforts |
|---|---|---|
| Dkt. No. 435 | Amended Chapter 11 Plan of Liquidation, dated August 8, 2018 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 436 | Amended Disclosure Statement, dated August 8, 2018 | Allegations re the Board's conduct during bankruptcy |
| Dkt. No. 510 | Order Granting Applications by Trustee and related professionals for fees and expenses, dated January 10, 2019 | Allegations re the Board's conduct during bankruptcy: quantifies costs of Trustee and professionals |